---

(No. 11642.—Reversed and remanded.)
JOHN F. STRALEY, Plaintiff in Error, *vs.* THE HOUSE OF THE GOOD SHEPHERD *et al.* Defendants in Error.

*Opinion filed December 19, 1917.*

1. PLEADING—*plea to part of a bill should definitely express to what part it extends.* A plea to part, only, of a bill in equity should definitely express to what part it extends; but this may be determined either from the substance of the plea or by express reference therein to the part of the bill to which the plea is interposed.

2. SAME—*what necessary to constitute a good plea in equity.* In equity the defense proper for a plea is such as reduces the cause, or some part of it, to a single point, and to be good the plea must be either an allegation or a denial of some leading fact, or of matters which, taken collectively, make out some general fact which is a complete defense.

3. SAME—*when pleas in equity should be overruled.* Where a bill in equity asks relief upon two distinct and several grounds, pleas which do not negative any fact alleged in the bill as to one ground but set up conclusions of law, only, are not sufficient and should be overruled on argument.

4. SAME—*when pleas are overruled by answer.* Where an answer to a bill in equity (excluding the caption, which is no part

of either an answer or plea,) commences as an answer to the whole bill it will operate to overrule pleas to the bill or any part thereof, as the office of a plea in equity is to present such a defense as shows the defendant should not be required to answer.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

CHARLES S. McNETT, for plaintiff in error.

SAMUEL A. ETTELSON, Corporation Counsel, JOHN S. HUMMER, GEORGE A. CURRAN, and JAMES W. BREEN, for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

This writ of error was sued out to review a decree of the circuit court of Cook county dismissing the bill for injunction of John F. Straley, plaintiff in error, against the House of the Good Shepherd, (a corporation,) Sister Agnes, superioress of the House of the Good Shepherd, the city of Chicago, Eugene Pike, city comptroller, and Charles Sergel, city treasurer of the city of Chicago.

The bill alleges that appellant is a citizen and tax-payer of the city of Chicago; that the House of the Good Shepherd is an institution maintained as an instrumentality of the Roman Catholic church; that it is a school and institution under church control, within the meaning of section 3 of article 8 of the constitution of 1870; that the inmates of that institution are reared and taught according to the creed of that church and are required to participate in religious worship according to its ceremonies, and that the House of the Good Shepherd is a corporation created by a special act of the General Assembly of Illinois in 1867 for the purpose of reforming abandoned women and affording an asylum to such females as have been led away from the paths of virtue. The bill then sets out in full the act incorporating the House of the Good Shepherd, as found in Private Laws of

1867, page 152. It is further alleged that said corporation has established in the city of Chicago an institution known as the House of the Good Shepherd, in which it maintains school rooms and chapels or rooms for religious worship, which are used in carrying out and performing the purpose of the corporation. The bill then contains a recital of what is represented to be some of the objects and tenets of the Roman Catholic church, and of the connection of that church, through the Sisters of the Good Shepherd, with the House of the Good Shepherd, and alleges that the order of the Sisters of the Good Shepherd procured the incorporation of the House of the Good Shepherd and has always kept that corporation under the control of said order and said church; that the House of the Good Shepherd was formed and now exists for a sectarian purpose; that after the House of the Good Shepherd was incorporated, the General Assembly, by an act passed and approved in 1869, provided that all the fines collected by the city of Chicago from the keepers, inmates and visitors of houses of prostitution should be set aside by the city for the sole use and benefit of the Chicago Erring Women's Refuge for Reform and the House of the Good Shepherd and should be equally divided between those two institutions, setting out the act in full, as found in Private Laws of 1869, vol. 1, p. 254; that said act is in violation of sections 3 and 8 of article 13 of the constitution of 1848 and in violation of section 3 of article 2 and section 22 of article 4 of the constitution of 1870. The bill then sets out the various amounts which it is claimed have been paid to the House of the Good Shepherd, pursuant to this act, from April 1, 1869, to December 31, 1915, making a total of $137,959.41. It is then alleged that the comptroller and treasurer of the city of Chicago consider themselves bound to make such payments under the said act of 1869, and that they will continue to make payments thereunder indefinitely unless restrained by order of court; that the institution known as the House of

the Good Shepherd receives and cares for a large number of women who are sent to it by the municipal court of Chicago or by the juvenile branch of the circuit court of Cook county, and now and for many years past has been collecting and receiving from the city of Chicago, out of money raised by general taxation, approximately $4000 per month; that said money, in form, is paid to the House of the Good Shepherd by way of compensation, but, in fact, is a donation of public money in aid of the Catholic church; that plaintiff in error is informed and believes that these payments are justified by the House of the Good Shepherd and by the treasurer and comptroller of the city of Chicago under a statute approved April 25, 1871, (Laws of 1871, p. 481,) whereby the city of Chicago was authorized to establish a house of correction to be under the control of a majority of a board of inspectors, and that section 12 of said act (which is set out in full) provides that said inspectors of the house of correction may establish a department thereof to be called a house of shelter for the more complete reformation and education of females. The bill then sets out in full a resolution passed by the board of inspectors of the house of correction of the city of Chicago on September 23, 1903, which provides for the establishment of a department of the house of correction of the city of Chicago to be known as a house of shelter for the more complete reformation and education of females, and that the house of shelter should be divided into two divisions, one to be established and maintained by the Chicago Erring Women's Refuge for Reform and the other by the institution known as the House of the Good Shepherd, in Chicago. The bill alleges further that subsequent to the adoption of this resolution girls have been sent by the municipal court of Chicago and by the juvenile branch of the circuit court of Cook county to the institution known as the House of the Good Shepherd instead of being sent to the house of correction, and that the House of the Good

Shepherd makes a charge against the city of Chicago of thirty cents per day for keeping each inmate so sent to it; that the arrangement contemplated and provided for by said resolution of September 23, 1903, is illegal and void, and that payments made thereunder amount to a donation of money to an institution controlled by the Catholic church. The bill prays that said statute enacted in 1869 in reference to money received from fines be decreed to be in violation of the constitution of 1848 and of the constitution of 1870, and that the city of Chicago, and the comptroller and treasurer of the city, and their successors, be restrained from paying or directing the payment of any money of the city of Chicago to the House of the Good Shepherd or any money collected from persons found guilty of violating any ordinance or statute relating to prostitution, and that the House of the Good Shepherd and Sister Agnes may be restrained from collecting or receiving the same, or any part thereof, from the city of Chicago; that the court decree that the House of the Good Shepherd acquired no rights under the said statute of 1871, or under said resolution, to collect money from the city of Chicago for keeping or caring for girls or women sent or committed to the institution known as the House of the Good Shepherd by the municipal court of Chicago or the juvenile branch of the circuit court of Cook county, and that the city of Chicago, and the city comptroller and city treasurer, be enjoined from paying or ordering paid to the House of the Good Shepherd any money of the city of Chicago for or on account of the keeping of such persons at said institution known as the House of the Good Shepherd and from paying to it any money whatever except upon the judgment of a court of competent jurisdiction, and that the House of the Good Shepherd may be restrained from receiving the same, and may be required to refund, with interest, to the city of Chicago all money paid to it either as part of the proceeds of fines collected under the act of 1869 or under the guise of

compensation for keeping girls or women sent to it by the municipal court of Chicago or the juvenile branch of the circuit court of Cook county.

To this bill Sister Agnes and the House of the Good Shepherd each filed an answer and a plea, and the city of Chicago, the comptroller and the city treasurer filed a joint and several answer and plea. These answers and pleas were all identical. The answers denied that at any time there were any inmates of the House of the Good Shepherd committed to it by the juvenile branch of the circuit court of Cook county, or that by a contract or arrangement between the city of Chicago and the House of the Good Shepherd an amount of thirty cents per day per girl is to be paid to the House of the Good Shepherd for the care, clothing, tuition, board, lodging, education, religious instruction and maintenance of said inmates, as alleged in the bill, and say that the inmates referred to in the bill are girls who have been committed by the juvenile branch of the circuit court of Cook county to the house of correction of the city of Chicago, and that said house of correction, by resolution thereinafter set forth in the plea, to which reference is made, established in connection with and as part of said house of correction a house of shelter for the care of girls committed to the house of correction by the juvenile branch of said circuit court, and that one branch of said house of shelter was established at the institution conducted by the House of the Good Shepherd, and that said girls are sent to said house of shelter by the authority of said house of correction and are not committed to the House of the Good Shepherd by the circuit court. Each answer further says that the payments of thirty cents per day made by the city of Chicago to the House of the Good Shepherd for each of said girls while in said institution are payments made by the city of Chicago to the House of the Good Shepherd for the board, lodging, clothing, education and maintenance of said girls while maintained in the said house of shelter,

281 — 39

and no part of said money is paid or used for religious instruction of the said girls or for sectarian purposes.

By the several pleas the said acts of November 7, 1867, and March 31, 1869, are again set out in full, as is the resolution passed September 23, 1903, by the board of inspectors of the house of correction. The pleas allege that the House of the Good Shepherd exercises none of its rights granted to it without the State of Illinois, and that it enjoys or exercises no rights or privileges other than such as are conferred by the provisions of its charter; that its charter was not intended to, and does not, authorize or empower it to engage in or carry on any religious or sectarian work; that the said act of March 31, 1869, does not authorize or empower the payment by the city of Chicago of any money in aid of any church or sectarian purpose or to help support or sustain any school, academy, seminary, college, university or other literary or scientific institution controlled by any church or sectarian denomination, and that the payment of one-half of the amount of any fines to the House of the Good Shepherd is not a grant or donation of money by the State of Illinois to any church or for any sectarian purpose. The pleas then conclude with the same allegations contained in the answers in reference to the charge in the bill that girls are sent to the house of shelter by the juvenile branch of the circuit court of Cook county, and the same denials as were contained in the answer to the charge that the money received was paid or used for religious instruction and sectarian purposes.

Exceptions to the answers were overruled and the pleas were set down for argument and allowed. Plaintiff in error declined to reply to the answers or to the pleas. A decree was entered allowing the pleas, finding the facts in accordance with the allegations of the answers and pleas and dismissing the bill for want of equity.

In his exceptions to the answers plaintiff in error asked that defendants in error be required to specify with more

exactness to what part of the bill they answered and to
what part they pleaded, and he insists here that it is im-
possible to determine what portion of the bill was answered
and to what portion the pleas applied.   A plea, like a de-
murrer, may be either to the whole or to a part, only, of
the bill.   If it does not go to the whole bill it should defi-
nitely and exactly express to what part it extends.   (Story's
Eq. Pl.—10th ed.—sec. 693; *Snow* v. *Counselman,* 136 Ill.
191.)   This may be determined either from the substance
of the plea or by express reference therein to the part of
the bill to which the plea is interposed.   The subject matter
of the pleas and answers filed in this case clearly discloses
the portions of the bill to which each applies.

By his bill plaintiff in error sought relief in two par-
ticulars: First, to restrain the proper officers from paying
to the House of the Good Shepherd the fines specified in
the act of 1869; and second, to restrain them from the
payment of any money by reason of the arrangement pro-
vided for by the resolution passed by the board of inspect-
ors of the house of correction of the city of Chicago on
September 23, 1903.   The pleas filed were evidently in-
tended to be anomalous, and each of them sought to show
that defendants in error should not be required to answer
the bill in either of these two particulars.   The two grounds
upon which plaintiff in error sought the relief prayed are
distinct and severable.   It does not necessarily follow if he
was entitled to relief upon one ground that he would be
entitled to it upon the other.   He might be able to secure
relief upon one ground and be denied it upon the other.
In equity the defense proper for a plea is such as reduces
the cause, or some part of it, to a single point.   In order
to be a good plea it must be either an allegation or a denial
of some leading fact, or of matters which, taken collect-
ively, make out some general fact which is a complete de-
fense.   (Story's Eq. Pl.—10th ed.—sec. 652; *Stephens* v.
*St. Louis Union Trust Co.* 260 Ill. 364.)   As to the first

ground for relief, the pleas do not negative any fact alleged in the bill but set up conclusions of law, only, and in this respect do not constitute proper pleas, and for this reason, alone, they should have been overruled.

Plaintiff in error insists that the pleas are overruled by the answers, and this contention must be sustained. An examination of the pleas discloses that as to the second ground for relief they were intended to cover the portion of the bill covered by the answers. The office of a plea in equity is to present such a defense as shows that the defendant should not be compelled to answer. If such a plea is filed, an answer repeating the same matter will overrule the plea, as the defendant will not be permitted by plea to aver that he ought not to be compelled to answer and at the same time to put his defense as to the same matter into the form of such an answer as the bill calls for. (Story's Eq. Pl.—10th ed.—sec. 688; Beach on Modern Eq. Pr. sec. 299; 16 Ency. of Pl. & Pr. 609; *Weber* v. *Fitzgerald, ante,* p. 330; *Souzer* v. *DeMeyer,* 2 Paige, 574; *Ocala Foundry and Machine Works* v. *Lester,* 49 Fla. 347, and cases there cited.) The answer and plea of the respective defendants are included in one instrument, the answer in each instance preceding the plea. Each of these instruments contains a caption which states that it is the answer of the defendant to a part of the bill of complaint and his plea to the remainder of the bill. This caption is no part of the answer or of the plea. Each answer commences as an answer to the whole bill, and as the language is the same in each answer, except as it varies to apply to one defendant in two instances and to three defendants in another, we will quote the commencement of the answer of Sister Agnes, which is as follows: "This defendant, now and at all times saving and reserving unto herself all advantage of exception that can be taken to said bill of complaint as amended, for answer to so much thereof as she

is advised it is necessary for her to answer, says." The answers contain no formal conclusion.

In *Leacraft* v. *Demprey,* 4 Paige, 124, the same situation was presented as here, and it was held that the plea was overruled by the answer, although it was apparent that none of the facts stated in the answer did, in fact, cover the part of the bill intended to be covered by the plea. In passing upon the question the chancellor said: "By referring to the commencement of the answer it will be seen that it purports to be an answer to the whole bill, without excepting those parts to which the defendant has pleaded in bar, both as to the discovery and relief. The defendant may plead, answer and demur to the same bill, but each of these defenses must refer to, and profess, in terms, to be put in as a defense to, separate and distinct parts of the bill. Thus, if an answer commences as an answer to the whole bill it will overrule a plea or demurrer to any particular part of the bill, although the defendant does not, in fact, answer that part of the bill which is covered by the plea or demurrer. * * * I see no objection, except as to the convenience of reference, in permitting the answer to precede the plea, as has been done in the present case. But then the pleader must, by a reference to the part of the bill which is subsequently covered by the plea, or otherwise, show that it is an answer to the residue of the bill, only. As the answer in this case commences and concludes as an answer to the whole bill in the same manner as if it was not intended to be followed by a plea as to part, in point of form the plea is overruled by the answer and can not, therefore, be allowed."

The pleas should have been overruled, and for the error committed in allowing them the decree of the circuit court is reversed and the cause is remanded, with directions to overrule the pleas, with leave to defendants in error to plead or answer further if they so desire.

*Reversed and remanded, with directions.*